UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MICHAEL RAY WATTS,

    Plaintiff,

v.

LOGAN NOVAK, DEPUTY STEVEN JOSEPHSON, CORPORAL KELLEN FEYERHARM, SERGEANT CARPENTER,

    Defendants.

Case No. 1:22-cv-0512-MO

OPINION AND ORDER

MOSMAN, District Judge:

Plaintiff Michael Watts ("Plaintiff"), a *pro se* adult in custody at the Two Rivers Correctional Institution, brings this civil rights action pursuant to 42 U.S.C. § 1983 alleging that Defendants used excessive force against him. Compl. [ECF 2]. Defendants now move for summary judgment. Defs.' Mot. Summ. J. [ECF 33]. Plaintiff has also filed a Motion for Order regarding the production of documents. Mot. for Order [ECF 73]. For the reasons that follow, Plaintiff's Motion for Order is DENIED, and Defendants' Motion for Summary Judgment is GRANTED.

1   - OPINION AND ORDER

**FACTUAL BACKGROUND**

The events underlying Plaintiff's claim occurred while he was being held at the Jackson County Jail ("Jail") in Medford, Oregon. On April 4, 2020, Plaintiff was watching television in the dayroom of housing unit 241. Compl. [ECF 2] at 13. He was not dressed in his required jail clothes and, even though he knew bedding material was not allowed in the dayroom, he was wrapped in a blanket because he was cold. Josephson Decl. [ECF 35]; Watts Decl. [ECF 70] at 2-3. Deputy Steven Josephson ("Josephson") turned off the television to communicate to Plaintiff that he was violating the rules. Josephson Decl. [ECF 35] at 2. Plaintiff hit the windows of the cellblock, which he says is a common way to communicate with deputies since there is no intercom system, Watts Decl. [ECF 70] at 3, even though this creates a safety concern issue, Feyerharm Decl. [ECF 34] at 2.

From the doorway, Josephson and Sergeant Kellan Feyerharm ("Feyerharm") ordered Plaintiff to roll up his bedding material and exit the dayroom. Feyerharm Decl. [ECF 34] at 3; Josephson Decl. [ECF 35] at 2. Due to Plaintiff's alleged "insolent behavior towards Jail staff," Defendants did not want to "engage or have an argument in the doorway of the cell." Josephson Decl. [ECF 35] at 3. Plaintiff stepped back and allegedly took a "bladed" or "fighting stance." Feyerharm Decl. [ECF 34] at 2; Josephson Decl. [ECF 35] at 3. Plaintiff disputes that he bladed his stance and says that he stepped back into the cell area to roll up his belongings. Watts Decl. [ECF 70] at 14.

Josephson then entered the cell and took ahold of Plaintiff's arm to bring him into the hallway. Josephson Decl. [ECF 35] at 3. Plaintiff resisted and a struggle ensued between him and Defendants in the hallway. *Id*. The altercation is captured on Jail video footage that has been submitted as an exhibit. *See* Tlascala Decl. [ECF 37] at Exs. 1 ("East Video"), 2 ("West Video").

2    - OPINION AND ORDER

Plaintiff admits that he wrestled with and "struggled to get away" from Defendants because he was worried about being exposed to COVID-19 during the early months of the pandemic and did not understand where he was being taken. Watts Decl. [ECF 70] at 4-5. He asserts that he repeatedly "stopped struggling" and "did [his] best to keep [his] hands off deputies and keep [his] palms open to display [he] was non-combative." *Id*. at 5. While video footage shows Plaintiff is, at times, standing with his hands up, it also shows Plaintiff actively resisting and attempting to break free from Defendants in the hallway for more than thirty seconds. *See* Tlascala Decl. [ECF 37], East Video at 0:32-1:15, West Video at 0:32-1:15; *see also* Feyerharm Decl. [ECF 34] at 2; Josephson Decl. [ECF 35] at 4.

Video footage also show Deputies Bjorklund ("Bjorklund") and Logan Novak ("Novak") arrive and help restrain and lower Plaintiff to the ground while Plaintiff continues to actively resist. *See* Tlascala Decl. [ECF 37], East Video at 1:14-1:28, West Video at 1:14-1:28. While on the ground, Defendants continue to struggle to place Plaintiff in handcuffs and Novak applies a single taser in drive-stun mode. *Id*., East Video at 1:42-1:52, West Video at 1:42-1:52; *see also* Josephson Decl. [ECF 35] at 4. Plaintiff is thereafter placed in handcuffs as additional deputies arrive. Tlascala Decl. [ECF 37], East Video at 1:52-2:55, West Video at 1:52-2:55.

According to Plaintiff, Novak tased him when he was not resisting and Defendants continued to use unnecessary force to inflict pain even after he was handcuffed. Watts Decl. [ECF 70] at 6-7. He claims Novak slammed his head against the ground and Josephson put his knee on his head and neck area, making it difficult to breath and also put his left hand into a "finger/wristlock." *Id*. at 7.

Video footage shows Defendants help Plaintiff to his feet. Josephson places Plaintiff in a shoulder lock and escorted him to "SEP 4," an isolation cell used for noncooperative AICs. *See*

3    - OPINION AND ORDER

Tlascala Decl. [ECF 37], East Video at 2:55-3:08, West Video at 2:55-3:20, Ex. 3 ("Kitchen Door Video") at 0:01-0:08. Plaintiff alleges Novak slammed his head against the cement wall while walking up the stairs, tore his earlobes and pulled his hair out. Watts Decl. [ECF 70] at 8-9. Video footage does not clearly capture whether Plaintiff's head makes contact with the wall while he is escorted up the stairs. *See* Tlascala Decl. [ECF 37], West Video at 3:09-3:20.

Once in the isolation cell, Defendants say Plaintiff was instructed to law down on the bunk so they could remove his handcuffs, but he refused. Josephson Decl. [ECF 35] at 4. Defendants allegedly lifted him and placed him on his stomach to remove the handcuffs. *Id*. Plaintiff claims that Novak slammed his forehead against the bed, choked him and pointed his taser laser at his eyes. Watts Decl. [ECF 70] at 9-10. Josephson asked Plaintiff if he had any injuries and he said that he was fine and stated, "sometimes you just have to get the aggression out, you know?" Josephson Decl. [ECF 35] at 4. Plaintiff was allegedly laughing as Defendants exited the cell. *Id*. at 5. Plaintiff later reported he sustained some injuries, and photographs show "an abrasion on his cheek and scrapes on his head, neck, arms and torso." *Id*. at 5, Exs. 1-18.

Plaintiff generally disputes that he fought against Defendants or refused their orders. Watts Decl. [ECF 70] at 14. Instead, he maintains that he "simply struggled against [their] use of force" against him. *Id*. He reports that he suffered eye damage, migraine headaches, hair loss, a torn left earlobe, an injured wrist and bruises, abrasions or scratches on his forehead, ears, neck, elbow, ribcage, back and knees. *Id*. at 11; *see also* Josephson Decl. [ECF 35], Exs. 1-18.

After the incident, Feyerharm reported that Plaintiff had kicked his knee, which caused it to buckle and make him fall to the ground. Feyerharm Decl. [ECF 34] at 2-3. The video footage shows Feyerharm fall to the ground but, due to the angle, it is difficult to tell whether Plaintiff's foot makes contact with Feyerharm's knee. *See* Tlascala Decl. [ECF 37], East Video at 0:43-0:56;

West Video at 0:46-0:55. Plaintiff disputes that he kicked Feyerharm in the knee, and believes that Feyerharm injured it when he fell down to the ground. Watts Decl. [ECF 70] at 14. Nevertheless, based on this event, Plaintiff was indicted for (1) Assault on a Public Safety Officer, (2) Assault in the Fourth Degree, and (3) Harassment, in Jackson County Criminal Case No. 20CR20161. Pietila Decl. [ECF 36], Ex. 1. Feyerharm was the named victim in each of the three counts. *Id*. Plaintiff ultimately entered a No Contest plea to Count Two, was sentenced to 70 months and the remaining charges were dismissed. *Id*., Exs. 2-6.[1]

## LEGAL STANDARD

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material of fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party has the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court cannot weigh the evidence or determine the truth but may only determine whether there is a genuine issue of fact. *Anderson*, 477 U.S. at 249.

An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. When a properly supported motion for summary judgment is made, the burden shifts to the opposing party to set forth specific facts showing that there is a genuine issue for trial. *Id*. at 250. Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposing party must, by affidavit or as otherwise provided by

---

[1] Count Two reads, "The defendant, on or about April 4, 2020, in Jackson County, Oregon, did unlawfully and recklessly cause physical injury to Kellan Jeffrey Feyerharm." Pietila Decl. [ECF 36], Ex. 1. The factual basis for Plaintiff's plea petition states, "as alleged in the charging instrument." *Id*., Ex. 4.

5    - OPINION AND ORDER

Rule 56, designate specific facts which show there is a genuine issue for trial. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001). In assessing whether a party has met its burden, the court views the evidence in the light most favorable to the non-moving party. *Allen v. City of Los Angeles*, 66 F.3d 1052, 1056 (9th Cir. 1995).

Because Plaintiff is proceeding *pro se*, the Court construes his pleadings liberally and affords him the benefit of any doubt. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, this does not relieve him of his "obligation to show a genuine issue of material fact for trial through the presentation of specific, admissible evidence." *Epling v. Komathy*, No. CV 10-5862-GAF (RNB), 2011 WL 13142131, at *1 (C.D. Cal. Dec. 5, 2011).

## DISCUSSION

### I.  Plaintiff's Filings

As an initial matter, the Court notes that Plaintiff's Response was filed more than three weeks late. The Court had previously granted Plaintiff multiple extensions of time to file his Response to Defendants' Motion for Summary Judgment. Text Order entered May 11, 2023 [ECF 43]; Order dated July 13, 2023 [ECF 62]. After the final extension, Plaintiff proceeded to file additional Motions to Compel Discovery even though discovery was closed. Mots. to Compel [ECF 63, 65]. Plaintiff offers no reason for his untimely Response. Defendants object to the Response as untimely and urge the Court to not consider it. Reply [ECF 72] at 2-3. However, in the interests of justice, the Court will consider Plaintiff's Response and address the merits of the case.

Plaintiff has also filed a Motion for Order regarding production of documents pursuant to a protective order. Mot. for Order [ECF 73]. The Court had previously granted Plaintiff multiple extensions of time to complete discovery, which closed on July 12, 2023. Text Orders entered May

11, 2023 [ECF 43], June 5, 2023 [ECF 48]. Moreover, despite being provided a courtesy, template protective order by Defendants to fill out and file himself, Plaintiff failed to otherwise move for a protective order prior to the close of discovery. *See* Mot. for Order [ECF 73], Ex. 1 at 15-21. Plaintiff's Motion is therefore DENIED.

## II.    Excessive Force Claim

Defendants assert that the use of force in this case was objectively reasonable as a matter of law in light of Plaintiff's failure to comply with commands, his active resistance to Defendants' attempts to place him in handcuffs, and his history of insolent behavior, and that they are entitled to qualified immunity. Defs.' Mot. Summ. J. [ECF 33] at 10-19. Plaintiff argues that Defendants used unnecessary and excessive force against him while he was not resisting, including after he was restrained in handcuffs and escorted to the isolation cell. Compl. [ECF 2] at 14-18; Resp. [ECF 69] at 8-9.

### a. Applicable Law Regarding Excessive Force

The Due Process Clause of the Fourteenth Amendment protects pretrial detainees from the use of excessive force. *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). To prevail on an excessive force claim, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 396-97. "[O]bjective reasonableness turns on the 'facts and circumstances of each particular case.'" *Id.* at 397 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The court "must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.* A non-exhaustive list of considerations that may bear on the reasonableness of the force used includes: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to

7    - OPINION AND ORDER

temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting" *Id*. (citing *Graham*, 490 U.S. at 396).

Because the *Kingsley* standard applicable to excessive force claims by pretrial detainees is purely objective, it does not matter whether the defendant understood that the force used was excessive or intended it to be excessive. *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1069 (9th Cir. 2016) (*en banc*). A pretrial detainee can prevail by providing "'objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose.'" *Id*. (quoting *Kingsley*, 135 S. Ct. at 2473-74).

  b. Applicable Law Regarding Qualified Immunity

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). In determining whether a defendant is entitled to qualified immunity, the Court engages in a two-part analysis. First, the Court asks, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson*, 555 U.S. at 235–236 (2009). Second, the Court asks "whether the right was clearly established." *Id*. A right is clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. at 202. The Court has discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236; *see also Mueller v. Auker*, 576 F.3d 979, 993–94 (9th Cir. 2009).

Even if the first prong is satisfied, the constitutional right at issue must have been "clearly established" in that defendant had fair warning that their specific conduct violated plaintiff's constitutional rights. *See Saucier*, 533 U.S. at 202 (explaining that if "[t]he law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment . . . is appropriate"). Such an inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id*. at 201.

    c. Analysis

The Court has viewed the videos submitted by Defendants in support of their summary judgment motion. Where, as here, video evidence is available in an excessive use-of-force case, the Court "should [ ] view[ ] the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 380-81 (2007). This does not mean that the Court no longer take the nonmovant's version of the facts as true where video evidence, seen in a light most favorable to the nonmoving party, leaves room for genuine dispute. Indeed, the Court must still draw all reasonable inferences in the nonmovant's favor. *Williams v. Las Vegas Metro. Police Dep't*, No. 2:13-CV-1340-GMN-NJK, 2016 WL 1169447, at *4 (D. Nev. Mar. 22, 2016).

When considering the *Kingsley* factors – the "severity of the security problem at issue" and "the threat reasonably perceived by the officer" – Plaintiff's conduct arguably threatened jail security and safety of jail officials. Plaintiff was knowingly violating jail rules and refusing directives which present security and safety concerns. Feyerharm Decl. [ECF 34] at 2; Josephson Decl. [ECF 35] at 2; *see also* Watts Decl. [ECF 70] at 3. Defendants were also aware of Plaintiff's alleged history of "insolent behavior towards Jail staff," did not want to "engage or have an argument in the doorway of the cell," and interpreted Plaintiff's step back into the cell area as a "bladed," or "fighting stance." Feyerharm Decl. [ECF 34] at 2; Josephson Decl. [ECF 35] at 3.

9    - OPINION AND ORDER

Regarding the next *Kingsley* factors – "the relationship between the need for the use of force and the amount of force used," "any effort made by the officer to temper or to limit the amount of force," and "whether the plaintiff was resisting" – video footage and Plaintiff's own allegations that he "stopped struggling [with Defendants] several times" establishes that Plaintiff was actively resisting Defendants. Watts Decl. [ECF 70] at 5. Plaintiff can be seen bracing his body, pushing against Feyerharm and Josephson, attempting to break free from them, using his legs to push or kick against them and otherwise struggling with them back and forth in the hallway for more than thirty seconds before additional deputies arrive. Tlascala Decl. [ECF 37], East Video at 0:32-1:14, West Video at 0:32-1:14. After Bjorklund and Novak arrive, video footage shows Plaintiff continuing to struggle against Defendants working to restrain and lower Plaintiff to the ground, avoiding dangerously slamming him to the ground, and thereafter attempting to gain control over his legs and arms. Tlascala Decl. [ECF 37], East Video at 1:15-1:42, West Video at 1:15-1:42.

According to Defendants, Novak tased Plaintiff because he "continued to resist and deputies were unable to get him into handcuffs." Defs.' Mot. Summ. J. [ECF 33] at 6. The taser was applied once in drive-stun mode and only long enough to gain Plaintiff's compliance. The Court notes that, n drive stun mode, "the taser delivers an electric shock to the victim, but it does not cause an override of the victim's central nervous system as it does in dart-mode." *Mattos v. Agarano*, 661 F.3d 433, 443 (9th Cir. 2011). In contrast, in dart-mode, the taser "delivers a 1200 volt, low ampere electrical charge through the wires and probes . . . [which] instantly overrides the victim's central nervous system, paralyzing the muscles throughout the body, rendering the target limp and helpless." *Bryan v. MacPherson*, 630 F.3d 805, 824 (9th Cir. 2010).

Plaintiff argues that Defendants' use of force caused him to react and "further resist," and that Defendants continued to use force while he was not resisting, including slamming his head on the ground, kneeing him in the side, and placing a knee on his head or neck area. Watts Decl. [ECF 70] at 5-7. Even accepting Plaintiff's allegation as true that he "quit resisting" once he was on the ground, Watts Decl. [ECF 70] at 6, he remained unrestrained and serious threat.

Ultimately, eight deputies escorted Plaintiff to the isolation cell, with four physically restraining him. Plaintiff alleges that Novak used excessive force while escorting him, including slamming his head against the cement wall, tearing his earlobes and pulling out his hair. *Id*. at 8-9. While video footage does not fully show Plaintiff's head and body as he is escorted up the stairs, the footage does show that minimal or *de minimis* force was used to transport Plaintiff to the isolation cell and Plaintiff can be seen pulling against or passively resisting Defendants. Tlascala Decl. [ECF 37], West Video at 3:00-3:25; Kitchen Door Video at 0:01-0:11; *Boyd v. Cnty. of Riverside*, No. EDCV1301282JVSDTB, 2016 WL 11755423, at *10 (C.D. Cal. Sept. 7, 2016), *report and recommendation adopted sub nom. Boyd v. Riverside*, No. EDCV1301282JVSDTB, 2016 WL 11755592 (C.D. Cal. Oct. 27, 2016) ("*de minimis* uses of force are . . . excluded from the Fourteenth Amendment's protections.") (citing *Graham*, 490 U.S. at 397).

Finally, as to the remaining *Kingsley* factor – "the extent of the plaintiff's injury" – photographs show an abrasion on Plaintiff's cheek, and scrapes on his head, neck, arms and torso. Josephson Decl. [ECF 35], Exs. 1-18; *see also* Compl. [ECF 2 at 20]. This evidence suggests that Plaintiff suffered no more than minor injuries as a result of the event, including being tased.

The evidence before the Court, even viewed in the light most favorable to Plaintiff, establishes that some use of force was necessary, and that Defendants applied force in a good faith effort to obtain Plaintiff's compliance and not maliciously and sadistically to cause harm.

11   - OPINION AND ORDER

Defendants reasonably believed that Plaintiff's noncompliance with rules and directives, his history of insolent behavior, his "willingness or desire to engage in a physical altercation," and his resistance and fighting against deputies presented a security issue. Josephson Decl. at 2-3 [ECF 35]; *see also Tamrat v. Marlowe*, No. 20-CV-07623-PJH, 2022 WL 207698, at *5 (N.D. Cal. Jan. 24, 2022) (defendants were reasonable to perceive plaintiff presented a security threat "by being uncooperative . . . forcibly resisting and . . . [acting] in a clearly threatening manner."). Video footage shows Plaintiff was uncooperative and actively resisting Defendants prior to being subdued. Even Plaintiff concedes that he "struggled" with Defendants, "stopped struggling several times" and only "quit resisting" when he was taken to the ground. Watts Decl. [ECF 70] at 5-6. Defendants reasonably responded to Plaintiff's resistance when they employed a controlled takedown to subdue him and deployed a single taser after they were unable to otherwise place him in handcuffs. *See Sheridan v. Trickey*, No. CIV. 10-06034-AC, 2010 WL 5812678, at *8 (D. Or. Dec. 16, 2010), *report and recommendation adopted*, No. CV 10-6034-AC, 2011 WL 588769 (D. Or. Feb. 10, 2011) ("a controlled takedown maneuver (*i.e.*, a takedown executed so as to produce only minimal injury) is clearly lawful where an arrestee resists arrest or presents an immediate threat"); *Silverman v. Lane*, No. 18-04510 BLF (PR), 2020 WL 3544987, at *1 (N.D. Cal. June 30, 2020) (finding officer's use of taser to gain detainee's compliance was reasonable and that officer was entitled to qualified immunity). When considering "the perspective of a reasonable officer on the scene," the Court cannot conclude that a reasonable jury would find that Defendants use of force was objectively unreasonable. *Kingsley*, 576 U.S. at 397.

Turning to Defendants' argument that they are entitled to qualified immunity, because the Court has determined that there was no constitutional violation of Plaintiff's rights, the first prong of the qualified immunity test is dispositive. Even taking the facts in the light most favorable to

Plaintiff, he concedes that was violating jail rules, and struggled with and resisted Defendants. While Plaintiff disagrees that his actions warranted the reactive force with which they were met, the use of at least some force was justified to maintain order and safety in the Jail, maintain control of Plaintiff and ensure the safety of Jail staff. The record does not support a finding that Defendants acted to punish Plaintiff or solely for the malicious and sadistic purpose of causing him harm. *Kingsley*, 576 U.S. at 400. Accordingly, no constitutional violation occurred here, and qualified immunity shield Defendants from suit. Defendants' Motion for Summary Judgment is granted.[2]

## CONCLUSION

For the reasons explained above, Plaintiff's Motion for Order [ECF 73] is DENIED and Defendants' Motion for Summary Judgment [ECF 33] is GRANTED. Plaintiff's Complaint [ECF 2] is dismissed with prejudice.

1/5/2024
DATE

*Michael W. Mosman*
Michael W. Mosman
United States District Judge

---

[2] Defendants also argue that Plaintiff's excessive force claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). Defs.' Mot. Summ. J. [ECF 33] at 8-12. As noted, Plaintiff pleaded No Contest to Assault in the Fourth Degree based on the events at issue. Defendants previously raised this argument in their Motion to Dismiss [ECF 12]. The Court denied that Motion, holding that it was "plausible that Plaintiff's excessive force claim against Defendants arises from conduct that occurred after the conduct upon which Plaintiff's assault conviction is based." Opinion and Order [ECF 19] at 6. Although Defendants maintain the evidence presented alleviates the Court's stated concerns, the Court declines to revisit or address this argument. Moreover, the Court is hesitant to apply *Heck* to no contest pleas, generally. *Flores-Haro v. Slade*, 160 F. Supp. 3d 1231, 1237 (D. Or. 2016), *aff'd in part, rev'd in part and remanded*, 686 F. App'x 454 (9th Cir. 2017).